Alan E. Ramos, SBN 214533
Craig S. Nevin, SBN 132281
Geoffrey Wm. Steele, SBN 219576
**NEVIN, RAMOS & STEELE**
700 Ygnacio Valley Road, Suite 220
Walnut Creek, California, 94596-3859
Telephone: (925) 280-1700
Facsimile: (925) 935-1642
Email: aramos@LawNRS.com
cnevin@LawNRS.com
gsteele@LawNRS.com

Attorneys for Debtor,
DEMEX ENGINEERING, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re: | Case No. 08-31873 |
| DEMEX ENGINEERING, INC. | Chapter 11 |
| Debtor. | **[No Hearing Date Scheduled]** |

MOTION OF DEBTOR AND FINANCIAL FEDERAL CREDIT, INC. FOR ORDER APPROVING STIPULATION FOR ENTRY OF INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 361, 362, 363, 503 AND 507, AND BANKRUPTCY RULES 4001 AND 9014: (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (II) MODIFYING THE AUTOMATIC STAY; (III) GRANTING POST-PETITION LIENS; AND, (IV) GRANTING ADEQUATE PROTECTION

Demex Engineering, Inc., Debtor and Debtor in Possession ("Debtor") and Creditor Financial Federal Credit Inc. ("FFCI") hereby move the Court for entry of an interim order pursuant to 11 U.S.C. §§105, and 361, 362, 363,503, and 507 and Bankruptcy Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9014-1(b) authorizing Debtor to use cash collateral; modifying the automatic stay; granting post-petition liens; and, granting adequate protection. In further support of the Motion, the Debtor and FFCI respectfully represent as follows:

///

///

1

## STATEMENT OF RELIEF REQUESTED

1. The Debtor seeks an interim order authorizing its use of cash collateral of FFCI.

2. On October 3, 2008, the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code.

3. On November 12, 2008, the Debtor and FFCI filed a Motion to authorize the Debtor to use the cash collateral of FFCI ("Initial Motion"), which is incorporated by reference hereto.

4. On December 18, 2009, the Court entered an interim order authorizing the Debtor to use the cash collateral of FFCI; this authorization expired on March 15, 2009.

5. On March 13, 2009, the Debtor filed with the Court a Stipulation by and between Debtor and Financial Federal Credit Inc. to Interim Order Pursuant to 11 U.S.C. §§105, and 361, 362, 363, 503, and 507 and Bankruptcy Rule 4001: (I) Authorizing Debtor to Use Cash Collateral; (II) Modifying the Automatic Stay; and (III) Granting Post-Petition Liens and (IV) Granting Adequate Protection extending the term of the Initial Stipulation (the "Renewed Stipulation").

6. No party filed an objection to the proposed Stipulation; however, inadvertently Debtor's Counsel did not upload an order for the Court's signature.

7. Debtor has fully complied with the terms and conditions of the Initial Stipulation and the Renewed Stipulation and is current on all of its post-petition obligations.

8. The Debtor seeks to continue to use FFCI's cash collateral and grant replacement liens and other relief as set forth below.

## FACTS

6. The Debtor is continuing in possession of its property and managing its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108;

7. On or about August 10, 2007, FFCI entered into a Lease Agreement ("Lease") with the Debtor whereby FFCI leased a Terex Wheel Loader, Model TXL250-2 ("Wheel Loader") to the Debtor. Pursuant to the terms of the Lease, the Debtor was to make 59 monthly lease payments of $3,275.00 plus tax. A true and correct copy of the Lease Agreement was attached to the Initial Motion as Exhibit 1.

8. In connection with entering into the Lease, the Debtor also granted FFCI a security interest in all of its personal property assets described as all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, security entitlements, deposit accounts, fixtures, and all other property then owned or thereafter acquired by the Debtor together with all books and records relating thereto and all proceeds therefrom ("Collateral"). FFCI first perfected its lien on the Collateral by filing its UCC-1 financing Statement with the Secretary of State on August 6, 2007, recorded as Instrument No. 07-7124820930. A true and correct copy of the UCC-1 Financing Statement was attached to the Initial Motion as Exhibit 2.

9. In addition to the Lease, on October 24, 2007, the Debtor obtained a loan from FFCI evidenced by a Promissory Note in the sum of $29,088.00. Pursuant to the terms of the Promissory Note, the Debtor was to make monthly installments of $1,212.00 until the loan was paid in full. A true and correct copy of the Promissory Note was attached to the Initial Motion as Exhibit 3.

10. In consideration for making the loan to the Debtor, FFCI was granted a security interest in two Airmen Air Compressors, Model Nos. 185CFM ("Compressors"). A true and correct copy of the Security Agreement evidencing the security interest in the Compressors was attached to the Initial Motion as Exhibit 4.

11. The Debtor failed to make all of the monthly payments due on both the Wheel Loader and the Compressors. The Debtor turned over possession of the Wheel Loader to FFCI and FFCI caused the Wheel Loader to be sold by public sale in a commercially reasonable manner for the net sum of $79,110.40. Applying the proceeds from the sale to the amount due on the Lease the balance due as of October 6, 2008 was $86,680.17 with interest accruing at the per diem rate of $42.97 per day plus attorneys' fees and costs.

12. The Debtor also failed to make all of the monthly payments due FFCI on the loan secured by the Compressors and the amount due on the loan which, as of November, 2008, was $20,041.13 plus accruing interest thereon and attorney's fees and costs. The Debtor needs the Compressors for its effective reorganization.

///

13. As a result of the grant of the lien on the Collateral, FFCI has a lien on "cash collateral" as that term is defined in U.S.C. § 363. FFCI will allow the Debtor to continue to use cash collateral on the terms and conditions set forth in a Stipulation by and between Debtor and Financial Federal Credit Inc. to Interim Order Pursuant to 11 U.S.C. §§105, and 361, 362, 363,503, and 507 and Bankruptcy Rule 4001: (I) Authorizing Debtor to Use Cash Collateral; (II) Modifying the Automatic Stay; and (III) Granting Post-Petition Liens and (IV) Granting Adequate Protection ("Stipulation"), attached hereto as Exhibit A.

## **IMPORTANT TERMS OF THE STIPULATION**

14. The Debtor proposes to continue to adequately protect FFCI by providing a replacement lien on post-petition accounts receivable and on the same assets that FFCI was granted a security interest in pre-petition. In addition, the Debtor proposes to continue to make monthly payments on both the Lease and the Note in the sum of $6,840.21. Payments shall continue to be due on the first of each month. The Stipulation shall remain in effect through the earliest of September 30, 2009, the occurrence of an event of default under the Stipulation, or the date the Stipulation ceases to be in full force and effect for any reason.

15. The Stipulation provides for a superpriority expense of administration to the extent the replacement liens and security interests granted to FFCI are insufficient to compensate FFCI for the use of its cash collateral.

16. Pursuant to the term of the Stipulation, the Debtor may not be able to recover upon any claim under 11 U.S.C. §§ 506(c), 552(b) or any other applicable law against any of FFCI's collateral by way of a surcharge or for costs and expenses arising out of or appertaining to the Debtor's bankruptcy.

17. The Debtor agrees that the Lease, Promissory Note and Security Agreement are valid and enforceable documents. The Debtor also cannot use FFCI's cash collateral to object, contest, raise any defenses to the validity, perfection, priority, extent or enforceability of the sums due to FFCI; to assert any action for preferences, fraudulent conveyances or other avoidance power claims or claims, counterclaims or causes of action against FFCI; to pay any monies compensation or otherwise to insiders of the Debtor except as set forth in the Debtor's budget attached to the

Stipulation; or to pay any amount on account of any claim arising prior to the petition date, unless such payments on accounts of pre-petition claims are approved by the Stipulation or consistent with the budget attached to the Stipulation.

18. In the event of a default in payments or performance under the terms of the Stipulation, the Lease, Promissory Note and Security Agreement, FFCI may terminate use of cash collateral and would obtain relief from the automatic stay to take possession of and liquidate the Compressors and its Collateral.

## LAW SUPPORTING THE ENTRY OF AN ORDER ON THE STIPULATION

19. The Debtor's use of property of the estate is governed by § 363 of the Bankruptcy Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under Section…1108…of this title and unless the court orders otherwise, the trustee [or debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business without notice or hearing.

20. The Bankruptcy Code establishes a special requirement, however, regarding the use of "cash collateral". Bankruptcy Code § 363(c)(2) permits the debtor in possession to use, sell or lease cash collateral under subsection (c)(1) only if either of two alternative circumstances exists:

> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use sale or Lease in accordance with the provisions of this section.

21. If the entities with an interest in cash collateral – here FFCI – does not consent to the use of its cash collateral, the Bankruptcy Court can authorize the debtor in possession to use said cash collateral under Bankruptcy Code § 363(c)(2)(B) if the Court determines that the debtor has provided "adequate protection" of the secured creditor's interest in the cash collateral.

22. Section 361 of the Bankruptcy Code provides that:

> When adequate protection is required…of an interest of an entity in property, such adequate protection may be provided by –
>
> (1) requiring the trustee to make a cash payment or periodic cash payment to such entity, to the extent that the…use…under section 363 of this title…results in a decrease in the value of such entity's interest in such property;

> (2) providing to such entity an additional or replacement lien to the extent that such…use…results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief…as will result in the realization by such entity of the indubitable equivalent in such entity's interest in such property

23. Neither § 361 nor any other provision of the Bankruptcy Code defines the nature and extent of the "interest in property of which a secured creditor is entitled to adequate protection under § 361. However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). See also: <u>General Electric Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.),</u> 25 B.R. 987, 989-90 & n4 ((Bankr. D. Utha 1982); O'Toole, <u>Adequate Protection and Postpetition Interest in Chapter 11 Proceedings</u>, 56 Am. Bankr. L.J. 251, 263 (1982).

24. The phrase "value of such entity's interest", although not define in the Bankruptcy Code, was addressed by the Supreme Court in the landmark <u>Timbers</u> decision, <u>United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, 484 U.S. 365, 108 S. Ct. 626 (1988). For the meaning of "value of such entity's interest", the Supreme Court was guided by § 506(a), which defines a creditor's allowed secured claim:

> "The phrase 'value of such creditor's interest' in § 506(a) means "the value of the collateral.' H.R. Rep. No. 950-595, pp. 181, 356 (1977); see also S. Rep. No. 95-989, p. 68 (1978) U.S. Code Cong. & Admin. News, 1978 pp. 5787, 6141, 6312. We think the phrase 'value of such entity's interest' in § 361(1) and (2), when applied to secured creditors, means the same."

Id. at 630 (emphasis added).

25. Thus, <u>Timbers</u> provides that a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed secured claim. Under <u>Timbers</u>, therefore, where the "value of the collateral" is no diminishing by its use, sale or lease, the creditor's interest is adequately protected. This conclusion flows directly from the equivalency of "value of such entity's interest" with "value of the collateral".

///

26. The Debtor and FFCI jointly agree that pursuant to the terms and conditions set forth in the Stipulation, FFCI is adequately protected by the payments and the replacement liens and other relief and will consent to the use of its cash collateral on those terms. Prior to September 30, 2009, the date when the use of cash collateral terminates, the parties will either agree on a stipulation for further use of cash collateral or the Debtor shall file a motion to use cash collateral if there is no such agreement and, in such event, FFCI shall have the opportunity to object.

27. This motion is being made by the Debtor and FFCI pursuant to the procedures set forth in Local Bankruptcy Rule 9014-1(b)(3). All parties shall have an opportunity to object to the relief set forth in the Stipulation and request a hearing on this matter. Any such hearing must be filed and served upon the Debtor and FFCI within 20 days of mailing of the notice. If no timely objection to the requested relief or request for hearing is made, the Court may then enter the order granting the relief by default.

WHEREFORE, the Debtor and FFCI pray for an Order from this Court approving the Stipulation submitted to the Court and for such other and further relief as the Court deems just and proper.

DATED: June 18, 2009　　　　　　　　NEVIN, RAMOS & STEELE

By: ＿＿/s/ Alan E. Ramos＿＿＿＿＿
　　ALAN E. RAMOS,
　　Attorneys for Demex Engineering, Inc.

DATED: June 18, 2009　　　　　　　　FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: ＿＿/s/ Andrew K. Alper＿＿＿＿＿
　　ANDREW K. ALPER
　　Attorneys for Creditor, FINANCIAL FEDERAL
　　CREDIT INC.