Alan E. Ramos, SBN 214533
Craig S. Nevin, SBN 132281
Geoffrey Wm. Steele, SBN 219576
**NEVIN, RAMOS & STEELE**
700 Ygnacio Valley Road, Suite 300
Walnut Creek, California, 94596-3838
Telephone: (925) 280-1700
Facsimile: (925) 935-1642
Email: aramos@LawNRS.com

Attorneys for Debtor,
DEMEX ENGINEERING, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re:<br><br>DEMEX ENGINEERING, INC.<br><br>               Debtor. | Case No. 08-31873<br><br>Chapter 11<br><br>**PLAN OF REORGANIZATION (December 31, 2009), AS AMENDED**<br><br>Date: March 12, 2010<br>Time: 9:30 a.m.<br>Place: 235 Pine St., Courtroom 23<br>        San Francisco, CA<br>Judge: Hon. Thomas E. Carlson |

**INTRODUCTION**

This plan of reorganization (the "Plan") provides for the restructuring of the debts of Demex Engineering, Inc. ("Debtor"). If confirmed, the Plan will bind all creditors provided for in the Plan, whether or not they file a proof of claim or accept the Plan, and whether or not their claims are allowed.

All creditors should refer to Parts 1 - 5 of the Plan for information regarding the precise treatment of their claims. A disclosure statement that provides additional information is being circulated with the Plan. The disclosure statement is descriptive and explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.**

**PART 1: SECURED CREDITORS**

**Class l(a). Collateral to be Surrendered.**

Debtor has no plans to surrender collateral on the Effective Date of the Plan.

///

**Class l(b). Rights Unaltered.**

Debtor will leave unaltered the creditor's contractual, legal, and equitable rights with respect to the following collateral. This class is not impaired and is not entitled to vote on confirmation of the Plan.

| Name of Creditor | Description of Collateral |
|---|---|
| Ford Credit | 2004 Ford F350 - Loan #43132515 |
| Ford Credit | 2005 Ford F350 - Loan #42055038 |
| Ford Credit | 2006 Ford Blue D (LCF) Loan #42274955 |
| Ford Credit | 2007 Ford F150 - Loan #43132357 |
| Ford Credit | 2006 Ford Explorer - Loan #41317638 |
| Ford Credit | 2006 Ford F250 - Loan #40665725 |
| Ford Credit | 2007 Ford F150 - Loan #43337846 |
| Colonial Pacific | Bobcat T 190 Track Loader |
| Colonial Pacific | Bobcat Mini Excavator 331 |
| Equilease Financial Svcs., Inc. | Takaeuchi Excavator |
| Wells Fargo Equipment Financing | Ingersol-Rand Bobcat S130 Wheel Loader |
| Wells Fargo Equipment Financing | Ford F650 Flatbed Truck |
| New World Equipment Funding, LLC | John Deere 80C Excavator |

**Class l(c). Collateral to be Sold.**

Debtor reserves the right to sell any or all of the following collateral by December 31, 2009, paying all claims secured by the collateral in full with interest at the closing of the sale. (Please note: debtor may elect not to sell the listed equipment. In that event, the loans will be treated as Class 1(b) claims and Debtor will leave unaltered the creditor's contractual, legal, and equitable rights with respect to the following collateral.)

| Name of Creditor | Description of Collateral | Value of Collateral | Estimated Amount Due |
|---|---|---|---|
| Puget Sound Leasing | KR 806 Tie Back Machine | $85,0000.00 | $99,506.69 |
| Ford Credit | 2004 Ford F350 - Loan #37149656 | $7,500.00 | $1,275.98 |
| Chase Auto Finance | 2006 Ford F350 - Loan #10603015062507 | $8,500.00 | $9,499.75 |

Debtor will make the following monthly payments pending the closing of any sale.

| Name of Creditor | Description of Collateral | Monthly Payment |
|---|---|---|
| Puget Sound Leasing | KR 806 Tie Back Machine | $2,689.37 |
| Ford Credit | 2004 Ford F350 | $637.99 |
| Chase Auto Finance | 2006 Ford F350 | $476.80 |

The payments will continue to be due the first day of each month.

Creditors in this class may not possess or dispose of their collateral so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10. This class is impaired and is entitled to vote on confirmation of the Plan. For instructions regarding voting see the Disclosure Statement.

///

2

CASE NO. 08-31873 – DEMEX ENGINEERING, INC. – PLAN OF REORGANIZATION – DECEMBER 31, 2009, AS AMENDED.

Case: 08-31873    Doc# 223    Filed: 02/05/10    Entered: 02/05/10 08:14:25    Page 2 of 11

**Class l(d). Collateral to be Sold Free and Clear of Liens**

Debtor has no plans to sell any assets free and clear of liens and encumbrances.

**Class l(e). Continue Regular Monthly Payment Debtor and Pay Arrears on Effective Date.**

Debtor will pay the entire amount due by making all monthly post-confirmation regular payments, and by paying all pre-confirmation arrears on the Effective Date. All payments will continue to be due as agreed.

| Name of Creditor | Description of Collateral | Regular Monthly Payment | Estimated Arrears |
|---|---|---|---|
| Cash Recovery | Heacox Portable Drill Rig. | $2,069.55 | $6,208.65 |
| Colonial Pacific | Bobcat T-190 Track Loader | $1,153.98 | $3,461.40 |
| Colonial Pacific | Bobcat mini Excavator 331 | $1,094.60 | $3,283.80 |
| Equilease Financial Svcs., Inc. | Takaeuchi Excavator | $498.79 | $498.79 |
| New World Equip. | John Deere 80C Excavator | $1,611.00 | $1,625.89 |
| Puget Sound Leasing | KR 806 Tie-Back Machine | $2,689.37 | $5,378.74 |
| Wells Fargo Leasing | Bobcat S130 Wheel Loader & F650 Flatbed Ford Truck | $1,583.80 | $1,583.80 |

Creditors in this class may not possess or dispose of their collateral so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10. This class is impaired and is entitled to vote on confirmation of the Plan. For instructions regarding voting see the Disclosure Statement.

**Class l(f). Pay Amount Due in Full over Time**

Debtor will pay the entire amount due with interest through equal monthly payments. Payments will continue to be due the 1st day of each month continuing payments initiated pursuant to a stipulation approved by the court on December 18, 2008.

| Name of Creditor | Description of Collateral | Amount Due | Interest Rate | Monthly Payment |
|---|---|---|---|---|
| Financial Federal | Two Airmen Air Compressors, Model Nos. 185CFM and all assets, including cash collateral, pursuant to pre-petition lease and loan agreements and a stipulation by and between the Debtor and Financial Federal, approved by the Court on December 18, 2008. | $34,201.05 | 9.79% | $6,840.21 |

Creditors in this class may not possess or dispose of their collateral so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10. This class is impaired and is entitled to vote on confirmation of the Plan. For instructions regarding voting see the Disclosure Statement.

///

///

**PART 2: GENERAL UNSECURED CREDITORS**

**Class 2(a). Small Claims.**

This class includes any creditor whose allowed claim is $1,000.00 or less, and any creditor whose allowed claim is larger than $1,000.00 but agrees to reduce its claim to $1,000.00. Each member of this class shall receive on the Effective Date of the Plan a single payment equal to 100 percent of that creditor's allowed claim, without interest.

(See Appendix A)

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10. This class is impaired and is entitled to vote on confirmation of the Plan. For instructions regarding voting and objections to confirmation see the Disclosure Statement.

**Class 2(b). General Unsecured Claims – Election for Early Payment Without Interest**

This class includes any creditor whose allowed claim is greater than $1,000.00 and less than $10,000.00, or any creditor whose allowed claim is larger than $10,000.00 who agrees to reduce its claim to $10,000.00. Each member of this class shall receive six quarterly payments which equal a total of 75 percent of the creditor's allowed claim without interest. The quarterly payments shall be paid as follows: First payment on or before June 30, 2010, then on or before each of the following dates: September 30, 2010, December 31, 2010, March 31, 2011, June 30, 2011 and September 30, 2011. Creditors whose claims are greater than $1,000.00 and less than $10,000.00 may elect to be paid with Class 2(c) claims; it is estimated that Class 2(c) claims will be paid 100 percent, plus 4 percent interest, over five years.

(See Appendix A)

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10. This class is impaired and is entitled to vote on confirmation of the Plan. For instructions regarding voting and objections to confirmation see the Disclosure Statement.

**Class 2(c). Other General Unsecured Claims**

Every other general unsecured creditors (including claims from rejected executory contracts and those creditors whose allowed claim is less than $10,000, but who elect treatment as a Class 2(c) creditor) shall be paid from available excess cash generated by the Debtor's ongoing operations. Excess cash is defined as the amount of cash in excess of the amount needed for ongoing operations (allowing a minimum of two months operating capital reserve - $200,000.00). (See Appendix B for detail of projected cash flows.) It is estimated that unsecured creditors will receive 100 percent of their allowed claims, plus 4 percent interest, in quarterly installments over a five-year period. Payments shall be paid as follows: First payment on or before June 30, 2010; then on or before the last day of each of the following months each year: September 30, December 31, March 31 and June 30, with the final payment due to be paid on or before December 31, 2014. In the event that the Debtor's available cash is less than that which is projected, the plan payments to unsecured creditors will be less than stated on Appendix A. In the event that the Debtor's available cash is in excess of that which is projected, plan payments to unsecured creditors will be increased.

(See Appendix A)

///

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10. This class is impaired and is entitled to vote on confirmation of the Plan. For instructions regarding voting and objections to confirmation see the Disclosure Statement.

**PART 3: PRIORITY CLAIMS AND EXPENSES OF ADMINISTRATION**

(a) <u>Professional Fees</u>. Professional fees may be paid only upon application and approval by the Bankruptcy Court. Holders of administrative claims for unpaid professional fees are not entitled to vote on confirmation of the Plan.

(1) Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later *.

| **Name and Role of Professional** | **Estimated Amount** |
|---|---|
| Nevin, Ramos & Steele, Counsel for the Debtor | $70,000.00 * |
| Schnader, Harrison Segal & Lewis, LLP, Counsel for The Official Committee of Unsecured Creditors | $22,000.00 |
| Bachecki, Crom & Co. Accountant for the Creditors' Committee | $ 7,500.00 |

* Counsel for the Debtor has agreed to be paid its court approved fees and costs in monthly increments of $7,500.00 beginning in April, 2010 through January, 2011.

Administrative priority creditors may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10.

(b) <u>Other Administrative Claims</u>. Debtor will pay other claims entitled to priority under section 503(b) in full on the Effective Date. Ordinary course of business payments will be made when due. Holders of administrative claims are not entitled to vote on confirmation of the Plan.

Administrative priority creditors may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10.

(c) <u>Tax Claims</u>. Debtor will pay claims entitled to priority under section 507(a) (8) in full over time with interest in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments shall be paid as follows: First payment on or before June 30, 2010; then on or before the last day of each of the following months each year: September 30, December 31, March 31, and June 30, with the final payment due to be paid on or before September 30, 2013. Payments to holders of priority tax claims will be increased with the June 30, 2011 payment (upon payment of the Class 2(b) claims. Holders of priority tax claims are not entitled to vote on confirmation of the Plan.

///

///

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| California Employment Development Department | $22,807.49 | 5.00% | $1,400.00 / $2,000.00 | 13 |
| California Franchise Tax Board | $1,839.86 | 4.75% | $55.00 / $85.00 | 13 |
| Internal Revenue Service | $142,653.50 | 4.00% | $8,350.00 / $12,350.00 | 13 |
| City & County of San Francisco | $17,558.11 | 4.75% | $1,050.00 / $1,525.00 | 13 |

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10.

(d)     Priority Wage Claims. There are no priority wages claims owing by the Debtor.

(e)     Employee Benefit Plans. Debtor proposes to pay claims entitled to priority under section 507(a) (5) in full on the Effective Date.

| Name of Creditor | Priority Amount of the Claim |
|---|---|
| Operating Engineers Local Union 3 Trust Funds | $10,950 |

This class is impaired and is entitled to vote on confirmation of the Plan. For instructions regarding voting see the Disclosure Statement. Creditors in this class may not take any collection action against Debtor so long as Debtor is not in Material Default in performing its obligations under the Plan. Material Default is defined in Part 10.

**PART 4:     EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a)     Executory Contracts/Leases Assumed. The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan and shall perform all obligations thereunder, both pre-confirmation and post-confirmation. Any pre-confirmation arrearage will be paid on the Effective Date, unless the parties agree otherwise, or the court finds that a proposed payment schedule provides adequate assurance of future performance. Post-confirmation obligations will be paid as they come due.

| Name of Lessor/Counterparty | Property Address or Description | Lease Contract Arrears as of the Effective Date |
|---|---|---|
| New World Equipment Funding, LLC | 2006 Putzmeister Concrete Pump | $871.15 |

(b)     Executory Contracts/Leases Rejected. The debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in property securing these executory contracts and/or unexpired leases. The Debtor waives the protection of the automatic stay and allows the affected creditor to obtain possession and dispose of its collateral, without further order of the court. Upon the date of the entry of the order confirming this Plan, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in paragraph (a) above.

It should be noted that there is a Financial Federal lease listed as rejected to reflect the return of the equipment pre-petition. The deficiency claim for the rejected lease was combined with the existing

6

loan agreement and is being paid according to its terms pursuant to a stipulation approved by the Court on December 18. 2008 (see Class 1(f) claims above).

A proof of claim arising from the rejection of an executory contract or unexpired lease must be filed no later than sixty (60) days after the date of the order confirming this Plan. Claims arising from rejection of executory contracts shall be included in Class 2 (general unsecured claims).

| Name of Creditor/Lessor | Property Address or Description |
|---|---|
| Colonial Pacific | Klemm/ KR803-1 Tie Back Machine |
| Colonial Pacific | HTF860 Lo-Drill |
| Financial Federal Credit | Terex Loader |
| GE Capital Solutions/TFS | Terex TXC300LC-2 Heavy Excavator |
| GE Capital Solutions/TFS | Terex TXC225LC-2 Heavy Excavator |
| OB1 Associates | 5 Thomas Mellon Circle, Suite 244, San Francisco, CA 94134 |

(c) <u>Executory Contracts Terminated Upon Their Expiration.</u> The following executory contracts will be allowed to expire on the expiration date noted and they will not be renewed.

| | | |
|---|---|---|
| Northern California AGC/Laborers Master Agreement with the District Counsel of Laborers | Collective Bargaining Agreement | Expires June 30, 2010 |
| Master Agreement for Northern California with Local Union No. 3 of the International Union of Operating Engineers | Collective Bargaining Agreement | Expires June 30, 2010 |
| Carpenters 46 Northern California Counties Master Agreement | Collective Bargaining Agreement | Expires June 30, 2012 |

**PART 5: EQUITY INTERESTS**

Shareholders of the Debtor shall retain their interests with their legal and equitable rights unaltered by the Plan. This class is not impaired and not entitled to vote on confirmation of the Plan.

**PART 6: DISPUTED CLAIMS**

(a) <u>Distribution on Allowed Claims</u>. Debtor will make distributions only on account of undisputed claims. If a creditor has filed a proof of claim, that claim is considered disputed only if a party-in-interest has filed an objection to the claim. If a party has not filed a proof of claim, but its claim is listed in Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated, such claim is considered disputed only if a party-in-interest has filed an objection to the claim. Listing a claim as disputed in the Plan, without filing an objection to the claim, does not make the claim a disputed claim. The Debtor reserves the right to file an objection to any creditor claim prior to the Effective Date of the Plan, or if the claims is filed after the Effective Date of the Plan, within 30 days after the claims are filed, and ask the Court to rule on such objection(s).

(b) <u>Delayed Distribution on Disputed Claims</u>. Debtor will make no distribution on account of a claim to which an objection has been filed by a party-in-interest, until such claim is allowed by a final order. Instead, Debtor will establish and hold an appropriate reserve pending determination of the disputed claims, and will pay the appropriate amount to claimant once the dispute is resolved.

(c) <u>Settlement of Disputed Claims</u>. The Debtor is authorized to settle and compromise a disputed claim without court approval.

**PART 7:    LAWSUITS RESERVED**

Debtor retains, and may seek to enforce, all claims against all persons or entities, including claims arising under non-bankruptcy law and claims arising under Chapter 5 of the Bankruptcy Code.

**PART 8: MEANS OF EXECUTION**

The Plan will be funded through quarterly payments from future income (see Appendix B attached). Because the Debtor does not have the ability to raise capital except by generating profits from operations, the Plan contemplates allowing the Debtor to accumulate cash reserves equal to at least two months of operating capital ($200,000.00). The plan payments listed in Appendix B are anticipated minimum payments based on certain assumed levels of profitability. In the event that the actual levels of profitability exceed the levels projected, plan payments will be increased. It is also possible in the current economic environment that profitability may not rise to the levels projected; in that event, plan payments may be decreased. The Debtor will make available all cash on hand, in excess of two months of operating capital (as detailed in Appendix B), for distribution to creditors under the plan at the end of each scheduled quarter. The scheduled quarters are those three-month periods ending on 3/31, 6/30, 9/30, and 12/31 of each year of the Plan. There is no current plan to increase the Debtor's principal's salary; however, his salary will not be increased during the Plan period in any amount greater than the increase in the cost of living as stated in the index for the greater San Francisco Bay Area. Additionally, there will be no increase in the principal's salary if the minimum Plan payments, as outlined in Appendix B, are not being made.

The disbursing agent for all Plan payments will be Credit Management Association ("CMA"). All fees for CMA's services shall be paid by the Debtor. The Debtor will provide quarterly financial statements to CMA which will make them available to any creditor requesting a copy.

The Official Committee of Unsecured Creditors shall remain in place after confirmation of this Plan for the limited purposes of: (a) bringing appropriate action to enforce the terms of the Plan, and (b) seeking the appointment of a trustee or conversion of the case to Chapter 7. In the event that the Debtor does not disburse payments to the Class 2(c) creditors for four (4) consecutive quarters, the Committee shall be authorized to ask the Court to convene a Status Conference for the purpose of determining the viability of the Plan moving forward.

**PART 9:    DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a)    <u>Discharge</u>. Confirmation of the Plan discharges Debtor from all debts provided for in the Plan, whether or not the creditor files a proof of claim, whether or not the creditor accepts the Plan, and whether or not the creditor's claim is allowed, except as provided in section 1141 of the Bankruptcy Code.

(b)    <u>Vesting of Property</u>. On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to chapter 7 as provided in Part 10(f) below, provided that the vesting of said property will be without prejudice and will not act as a bar to a post-confirmation motion to convert this case to one under chapter 7 by any party-in-interest on any appropriate grounds. The granting of such motion will revest all of the Debtor's property not already administered into the chapter 7 estate.

(c)    <u>Plan Creates New Obligations</u>. Except as provided in Part 10, paragraph (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that

8

CASE NO. 08-31873 – DEMEX ENGINEERING, INC. – PLAN OF REORGANIZATION – DECEMBER 31, 2009, AS AMENDED

Case: 08-31873    Doc# 223    Filed: 02/05/10    Entered: 02/05/10 08:14:25    Page 8 of 11

existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 10: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a) <u>Automatic Stay Vacated</u>. The automatic stay of section 362(a) of the Bankruptcy Code terminates as of the Effective Date of the Plan.

(b) <u>Creditor Action Restrained</u>. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, notwithstanding paragraph (a) above, a creditor may not take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in Material Default under the Plan, as defined in paragraph (c) below.

(c) <u>Material Default Defined</u>. If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 5 calendar days after the time specified in the Plan for such payment or other performance, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 10 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court an extension of time to cure the default, or a determination that no default occurred, then Debtor is in Material Default under the Plan.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, an affected creditor may:

(i) Take any actions permitted under applicable non-Bankruptcy law to enforce the obligation due the affected creditor under the Plan, and may accelerate the time for performance of all payments and other performance due to the creditor over the course of the Plan and not yet performed at the time of the Material Default; or

(ii) File and serve a motion to convert the case to one under chapter 7.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2) (A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under chapter 7:

(i) All property of the Debtor as of the date of conversion, whether acquired pre-confirmation or post-confirmation, shall vest in the chapter 7 bankruptcy estate; and

(ii) All creditors, whether their claims arose pre-confirmation or post-confirmation, are prohibited from taking action against the chapter 7 bankruptcy estate or property of the estate by section 362 of the Bankruptcy Code.

(g) <u>Retention of Jurisdiction.</u> This court shall retain jurisdiction over proceedings: (i) to determine whether Debtor has defaulted in performance of any Plan obligation; (ii) to determine whether the time for performing any Plan obligation should be extended; (iii) to determine whether a trustee should be appointed or the case should be converted to one under chapter 7 (and proceedings following any such conversion); (iv) to determine whether Debtor is in Material Default; to adjudicate any dispute between the parties in interest and the Debtor; and (vi) any enforcement action permitted under paragraph (d) (1) of Part 10, above.

## PART 11: TEMPORARY INJUNCTION

The Debtor business is operated by Mr. Uwe Guehnemann, who serves as President of the corporation, and operates the business with only one part-time assistant. The Debtor's success is entirely related to his ability to focus his time, energies and interests on the Debtor business. Mr. Guehnemann has personally guaranteed a number of the obligations of the Debtor. As of the date of the filing of the Plan of Reorganization, a number of lawsuits have been filed; two of which have been taken off-calendar or continued for the time-being and at least two are scheduled to go to trial in or after March of 2010. Concurrent with the confirmation this Plan, the Debtor will ask the Court to enter a Temporary Injunction, pursuant to the Court's powers under 11 U.S.C. §105, enjoining any party from filing any complaint, or pursuing any existing complaint, against Mr. Uwe Guehnemann to enforce any personal guarantee of the Debtor's obligations which is provided for under the Plan. For so long as the Temporary Injunction remains in effect, Uwe Guehnemann shall be restrained and enjoined from transferring, encumbering, or otherwise disposing of any of his real or personal property (except for transfers made in the ordinary course of business that do not result in a material reduction in his net worth), unless such transfer, encumbrance, or disposition is approved by the Court after due notice to creditors. The Temporary Injunction will be in effect so long as the Debtor is in compliance with the terms of the Plan. The Temporary Injunction will be vacated in the event that the Debtor is in Material Default and fails to cure the default or obtain an extension of time in which to cure the default as described in Part 10 (c) above.

The Temporary Injunction will mitigate the irreparable harm to the Debtor, and the Debtor's ability to fund the Plan, that would result from litigation against Mr. Guehnemann. If Mr. Guehnemann is forced to defend himself against such litigation, it will divert his time, energies and interests from the Debtor business and place the Plan in peril. The Debtor has no adequate remedy at law, as these actions will be, and are being, taken against Mr. Guehnemann individually and are not enjoined by the automatic stay or otherwise covered by the discharge injunction. The Plan has a reasonable probability of success, assuming that Mr. Guehnemann has the ability to focus his attentions on the operation of the Debtor business. The Temporary Injunction will also act to toll all applicable statutes of limitations for the existing personal guarantees, or other claims against Mr. Guehnemann, thereby mitigating any risk to those parties holding personal guarantees. For these reasons, the Debtor believes that a Temporary Injunction is in the best interests of the Debtor and all parties in interest.

## PART 12: GENERAL PROVISIONS

(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the later of the eleventh business day following the date of the entry of the order of confirmation or March 31, 2009, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, the Plan proponent may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors.

(c) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

///

(d) <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in the Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

(e) <u>Captions.</u> The headings contained in the Plan are for reference and convenience only and do not affect the meaning or interpretation of the Plan

(f) <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

(g) <u>Notices</u>. Any notice to the Debtor shall be in writing and mailed, and will be deemed to have been given three days after the date sent by first class mail, postage prepaid and addressed as follows:

| Attorney for the Debtor: | Debtor: |
|---|---|
| Alan E. Ramos<br>Nevin, Ramos & Steele<br>700 Ygnacio Valley Road, Suite 300<br>Walnut Creek, CA 94596-3838 | Demex Engineering, Inc.<br>218 Shaw Road Suite C<br>South San Francisco CA 94080 |

(h) <u>Requests for Plan Payment Information</u>. All post-confirmation requests for information (financial statements, questions about Plan disbursements, etc.) shall be in writing and addressed as follows:

Credit Management Association
P.O. Box 1838
San Leandro CA 94577
(510) 346-6000

11

CASE NO. 08-31873 – DEMEX ENGINEERING, INC. – PLAN OF REORGANIZATION – DECEMBER 31, 2009, AS AMENDED

Case: 08-31873    Doc# 223    Filed: 02/05/10    Entered: 02/05/10 08:14:25    Page 11 of 11